IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JOEL JACKSON,
    Plaintiff,

v.

RICHARD BIRKEY, *et al.*,
    Defendants.

Case No. 1:14-cv-01108-MMM

## ORDER

Before the Court is the Defendants'—Richard Birkey, Richard Mautino, and Curtis Wilkey—Combined Motion Under Federal Rules of Civil Procedure 50(b) and 59(a).  (D. 148).[1] They also submitted a supporting memorandum thereto.  (D. 149).  The Plaintiff, Joel Jackson, filed a Response in Opposition (D. 164) and the Defendants filed a Reply (D. 169).  After the Plaintiff obtained a verdict against them at trial in this Court, the Defendants now argue they are entitled to judgment as a matter of law and, alternatively, that they are entitled to a new trial.  For the reasons set forth below, the Defendants' Motion (D. 148) is DENIED.

### BACKGROUND

The background of the Plaintiff's underlying claims and the facts of this case are detailed in a previous Order.  (D. 89 at pp. 1-2).  In summary, while incarcerated within the Illinois Department of Corrections ("IDOC") at the Illinois River Correctional Center, he was employed as an inmate worker in the Illinois River Correctional Center Bakery.  On May 17, 2011, the Plaintiff severed four fingers on his right hand while cleaning a machine known as a bun hopper. He claims the Defendants were deliberately indifferent, in violation of his constitutional rights

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

under the Eighth Amendment, because they knew there was a significant risk of danger to inmates working on the bun hopper—a duty assigned to him—and they failed to train him properly on it. (D. 58).

The Illinois River Correctional Center Bakery is a facility operated by Illinois Correctional Industries, an IDOC program. During the time at issue, Birkey was the Warden of Illinois River Correctional Center, Mautino was the Food and Beverage Manager of Illinois Correctional Industries, and Wilkey was the Acting Superintendent of the bakery.

In October 2018, this Court presided over a jury trial in this matter. Multiple inmates testified that they were either never trained by the staff at the bakery or were given minimal guidance before working. The inmates consistently stated that their primary source of training was from fellow inmates. Three inmates also testified that they suffered a serious injury while working on the bun hopper. (D. 158 at pg. 29); (D. 159 at pp. 84-85; 94). The Defendants each testified that they would be notified about serious injuries to inmate workers in the course of ordinary business operations. (D. 158 at pp. 171-72; 175; 245-47; 254; 295). One of the injured inmates testified that he spoke with Wilkey about his injury afterwards (D. 159 at pp. 84-85), and Wilkey acknowledged his general responsibility for safety in the bakery (D. 158 at pg. 278).

An expert for the Plaintiff, William Howard, also testified at trial. The Defendants had sought to bar his testimony entirely. (D. 112). After hearing oral arguments on the matter during pretrial proceedings, the Court granted in part and denied in part the Defendants' Motion—allowing Howard to testify but barring him from referencing Occupational Safety and Health Administration ("OSHA") standards, which the Court found had limited relevance to the case. (See the Court's August 24, 2018 Minute Entry); see also (D. 89 at pg. 12).

Howard opined at trial that a bun hoper should not be operated without an upper hoper in place to keep operators' hands away from a dangerous part of the machine with spinning blades. He further testified that it is an unsafe practice to clean machines such as the bun hoper without initiating a protocol known as lockout/tagout, which is designed to ensure that machines cannot unintentionally be turned on. Howard did not mention or discuss OSHA standards.

In discussions about jury instructions, the Plaintiff offered proposed jury instruction number three, a modified version of the Seventh Circuit Pattern Jury Instruction No. 7.15. (D. 135-1 at pg. 10). It contained the following language: "a Defendant failed to ensure that the bun hoper was safe" [thereby subjecting the Plaintiff to a strong likelihood of serious harm]. *Id*. The Defendants objected to the quoted language. *Id*. at pg. 11. Ultimately, the final version of the instruction that the Court gave the jury stated, in relevant part, "a Defendant failed to protect Plaintiff from a known danger relating to the bun hopper, and thereby subjected Plaintiff to a strong likelihood of serious harm." (D. 136 at pg. 23).

At the close of the Plaintiff's case in chief, the Defendants moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). They argued: (1) that the Plaintiff had failed to meet his burden and present enough evidence; (2) that the evidence established that (a) proper training for the Plaintiff was in place, (b) there were proper safety mechanisms in place on the bun hoper, and (c) the Plaintiff put his hand into the machine while it was running; and (3) that none of the remaining Defendants in the case were responsible for training the Plaintiff. (D. 159 at pp. 195-98). The latter argument specifically referenced a former Defendant, Terry Sutter. *Id*. at pg. 196-98. The Court denied the Defendants' Motion. *Id*. at pp. 198.

The jury returned a verdict in favor of the Plaintiff and against each of the Defendants. (D. 137). They awarded the Plaintiff $350,000 in compensatory damages and a total of $100,000 in punitive damages. *Id*. Shortly thereafter, the Defendants filed the instant Renewed Motion for Judgment as a Matter of Law and included a Request for a New Trial. (D. 148).

The Defendants first argue, pursuant to Rule 50, that: (1) they were wrongly held liable for Sutter's failure to train the Plaintiff (D. 149 at pp. 5-9); (2) Birkey and Mautino were unaware of the risks associated with cleaning the bun hopper because they had no actual knowledge of the three prior inmate injuries (*Id*. at pp. 9-12); (3) even assuming that Birkey and Mautino did know about the prior inmate injuries, their failure to take affirmative steps to prevent future injuries would not equate to cruel and unusual punishment (*Id*. at pp. 12-14); and (4) no reasonable jury could find that the Defendants' conduct was malicious and reckless, entitling the Plaintiff to an award of punitive damages (*Id*. at pp. 14-15). Pursuant to Rule 59, the Defendants further claim: (1) allowing the Plaintiff's proposed jury instruction number three was reversible error (D. 149 at pp. 15-17); (2) expert Howard's testimony was improper (*Id*. at pp. 17-20); and (3) awarding punitive damages to the Plaintiff was against the manifest weight of the evidence (*Id*. at pg. 21). See also (D. 148 at pg. 2). Lastly, the Defendants make a general claim that they are entitled to qualified immunity (D. 149 at pg. 21).

**LEGAL STANDARD**

A Rule 50(b) motion "is only a renewal of the preverdict [50(a)] motion, [and] it can be granted only on grounds advanced in the preverdict motion." *Passanti v. Cook County*, 689 F. 3d 655, 660 (7th Cir. 2012) (citing Fed. R. Civ. P. 50(b), comm. Note (2006 amend.)) (additional citations omitted). Parties forfeit claims they did not argue both preverdict and postverdict. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404-05 (2006).

4

When reviewing Rule 50 motions, the Court "views the evidence and all reasonable inferences in a light most favorable to the party who prevailed under the verdict." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000). In making a Rule 50(b) determination, the Court is not at liberty to weigh the parties' evidence, judge the credibility of witnesses, or substitute its judgment of the facts for that of the jury's. *McNabola v. Chicago Transit Authority*, 10 F. 3d 501, 515 (7th Cir. 1993). Judgment as a matter of law may only be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." FED. R. CIV. P. 50. Simply put, "[a] trial court should overturn a verdict only where the evidence supports but one conclusion—the conclusion not drawn by the jury." *Ryl-Kuchar v. Care Centers, Inc.*, 565 F. 3d 1027, 1030 (7th Cir. 2009) (citing *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F. 3d 562, 568 (7th Cir. 1995)).

Similarly, when reviewing motions for a new trial brought pursuant to Rule 59(a), the Court must "construe[] the evidence strictly in favor of the party who prevailed before the jury and examine[] the evidence only to determine whether the jury's verdict could [have] reasonably be[en] based on that evidence." *Passanti v. Cook County*, 689 F. 3d at 659 (citing *Tart v. Illinois Power Co.*, 366 F. 3d 461, 464 (7th Cir. 2004)). Rule 59 motions will only be granted if "the verdict is against the weight of the evidence … the damages are excessive, or … for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F. 3d 525, 530 (7th Cir. 2004) (citations omitted). The decision to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

ANALYSIS

I.

First, the Defendants forfeited the following Rule 50(b) arguments: (1) that Birkey and Mautino were unaware of the risks associated with cleaning the bun hopper because they had no actual knowledge of the three prior inmate injuries; (2) even assuming Birkey and Mautino did know about the three prior inmate injuries, their failure to take affirmative steps to prevent future injuries would not equate to cruel and unusual punishment; and; (3) that no reasonable jury could find that the Defendants' conduct was malicious and reckless, entitling the Plaintiff to an award of punitive damages. The Plaintiff argues that the Defendants forfeited these Rule 50(b) claims by failing to make them in their Rule 50(a) arguments at trial. (D. 164 at pg. 9) (citing *Wallace v. McGlothan*, 606 F. 3d 410, 418-19 (7th Cir. 2010)).

Under the most liberal construction of the Defendants' arguments noted above, they have no reasonable foundation in their original 50(a) Motion. As discussed previously, the Court need not address Rule 50(b) arguments now asserted by the Defendants which were not argued in their Rule 50(a) Motion because they were forfeited. *Passanti*, 689 F. 3d at 660 (citing Fed. R. Civ. P. 50(b), comm. Note (2006 amend.)); *Unitherm*, 546 U.S. at 404-05. Therefore, the Defendants' Rule 50(b) arguments identified above are DENIED.[2]

The Defendants' only remaining Rule 50(b) claim is that they were wrongly held liable for Sutter's failure to train the Plaintiff. (D. 149 at pp. 5-9). They claim Sutter, who is no longer a defendant in this matter, was responsible for training the Plaintiff on the bun hopper and, at

---

[2] The Court notes that the Defendants first assert their qualified immunity argument under Rule 50(b) in their Motion. (D. 148 at pg. 2). To the extent that the Defendants make this argument pursuant to Rule 50(b), it is also forfeited for failing to raise it in their Rule 50(a) Motion. In their supporting memorandum, the Defendants neglect to assert their claim pursuant to Rule 50(b). Instead, they assert it generally, without citation to authority, further forfeiting their claim. (D. 149 at pg. 21); *Judge v. Quinn*, 612 F. 3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

best, the evidence at trial established that Mautino and Wilkey were Sutter's supervisors. *Id*. at pg. 5. In their view, nothing at trial established that Mautino and Wilkey were ever aware that Sutter failed to train the Plaintiff, and there was no proof of their personal involvement in the conduct at issue, which is required for them to be held liable for a subordinate's actions. *Id*. at pp. 5-6.

To prove his Eighth Amendment claim, the Plaintiff needed to demonstrate that the Defendants were deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Because inmates have been deprived of the ordinary means of protecting themselves, liability in deliberate-indifference cases can be found when prison staff fail to protect a prisoner from a known danger." *Bratchett v. Braxton Environmental Services Corp., et al.*, 564 Fed Appx. 229, 233 (7th Cir. 2014) (citations omitted). "[A] prison official may be found liable only if he 'knows of and disregards an excessive risk to the inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Boyce v. Moore*, 314 F. 3d 884, 888 (7th Cir. 2002) (citing *Farmer*, 511 U.S. at 837) (additional citations omitted).

Here, the Defendants emphasize that there was no evidence presented at trial that they knew Sutter failed to train the Plaintiff on the bun hopper before he was assigned to work on it. (D. 149 at pp. 5-8). They also, appropriately, highlight that it would be insufficient for the Plaintiff to merely prove that they could or should have known about prior accidents on the machine. *Id*. at pp. 9-12. The Defendants concede that Wilkey knew about one of the prior injuries but argue there was no way the Defendants could have known about the other accidents,

7

or that Birkey and Mautino knew about any of them, because the inmates themselves never personally informed the Defendants about the accidents. *Id*. at pg. 9.

At trial, however, three inmates testified that they suffered a serious injury as a direct result of working on the bun hopper before the Plaintiff's incident. (D. 158 at pg. 29); (D. 159 at pp. 84-85; 94). While the Defendants denied knowing about these incidents or remembering them specifically, they each testified that they would be notified of all serious injuries to inmate workers at the bakery in the course of day to day operations. (D. 158 at pp. 171-72; 175; 245-47; 254; 295). One of the injured inmates specifically testified that he spoke with Wilkey about his injury afterwards. (D. 159 at pp. 84-85).

Under the circumstances, it was reasonable for the jury to conclude that the Plaintiff met his burden and proved his Eighth Amendment claim. The jury heard testimony that three other inmates were injured on the same machine before the Plaintiff suffered a similar injury. Coupled with the Defendants' testimony that they each were, generally, informed of all serious injuries at the bakery, there was a sufficient basis for the jury to conclude that the Defendants knew of an excessive risk to the Plaintiff's safety and ignored it. It was also reasonable for the jury to further find that the Defendants were aware of these facts, from which they could reasonably infer that the Plaintiff was exposed to a substantial risk of serious harm, and that the Defendants actually drew that inference. The Defendants' claims that they were unaware of the risks associated with allowing prisoners to operate the bun hopper and that the injured inmates never personally told them about their injuries does not make the jury's finding unreasonable. Based on the record before the Court, the jury's verdict was, in fact, reasonable and rationally linked to evidence presented at trial. Accordingly, the Defendants' remaining Rule 50(b) argument is DENIED.

**II.**

Next, the Defendants argue they are entitled to a new trial, pursuant to Rule 59, on multiple grounds. (D. 149 at pp. 15-21). As a reminder, when reviewing Rule 59 motions, the Court must "construe[] the evidence strictly in favor of the party who prevailed before the jury and examine[] the evidence only to determine whether the jury's verdict could [have] reasonably be[en] based on that evidence." *Passanti*, 689 F. 3d at 659. Such motions will only be granted if "the verdict is against the weight of the evidence … the damages are excessive, or … for other reasons, the trial was not fair to the party moving." *Kapelanski*, 390 F. 3d at 530.

First, the Defendants claim that allowing the Plaintiff's proposed jury instruction number three (D. 135-1 at pg. 10) was reversible error. (D. 149 at pp. 15-17). Specifically, they state: "[b]y allowing the jury to determine that 'a Defendant failed to ensure that the bun hoper was safe' subjecting Plaintiff to a strong likelihood of serious harm, the judge allowed a misleading jury instruction." *Id*. at pp. 16-17 (erroneously quoting a proposed instruction but citing to the actual instruction given, (D. 136 at pg. 23)). The Defendants' claim is inaccurate.

As the Plaintiff points out, the proposed instruction was never given to the jury with the specific language the Defendants cite and object to. (D. 164 at pp. 17-18). Rather, the language quoted by the Defendants above and in their Motion is from a *proposed* jury instruction. (D. 135-1 at pg. 10). In reality, the relevant portion of the instruction they cite states "a Defendant failed to protect Plaintiff from a known danger relating to the bun hopper, and thereby subjected Plaintiff to a strong likelihood of serious harm." (D. 136 at pg. 23). Given that the Plaintiff's argument is based on a false premise, it fails. The Defendants' Rule 59 claim for relief based on the Court's alleged allowance of the Plaintiff's proposed jury instruction number three is DENIED.

The Defendants also allege that allowing Howard's testimony was improper. (D. 149 at pp. 17-20). Without citing to the record, they state that Howard "offered opinions [at trial] based on 'bakery industry standard' including opinions regarding lockout/tagout procedure training at the Illinois River Correctional Center bakery and the safety of the bun hoper machine." *Id*. at pp. 17-18. More specifically, the Defendants assert that: (1) his general testimony about bakery industry standards prejudiced them, in violation of Federal Rule of Evidence 403, and also confused and misled the jury (*Id*. at pp. 18-19); (2) his opinion that the bun hoper did not meet industry standards and was unsafe because it lacked an upper hoper was irrelevant and prejudicial, pursuant to Federal Rules of Evidence 401 and 403 (*Id*. at pg. 19); and (3) his general testimony about vague, bakery industry standards violated the Court's bar against OSHA references, which are inapplicable to the bakery, and unfairly misled the jury (*Id*. at pp. 19-20). The Plaintiff argues in response that the Court did not abuse its discretion by allowing Howard to testify. (D. 164 at pp. 20-22). He further asserts that even if the Court did abuse its discretion in allowing the testimony, the Defendants have failed to establish that the alleged error infected the proceedings to the extent that a new trial is necessary.

Construing the evidence strictly in favor of the Plaintiff, as the prevailing party, the Court concludes that the evidence noted by the Defendants in their Motion does not entitle them to a new trial. As noted above, the jury's verdict was reasonably based on the evidence. Additionally, as the Plaintiff highlights, industry standards—including OSHA's—can be relevant in constitutional cases. (D. 164 at pp. 20-21) (citing *Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013), *Sanders v. City of Chicago Heights*, 2016 WL 1730608, *9, and *French v. Owens*, 777 F. 2d 1250, 1257 (7th Cir. 1986)). Here, the Court cannot say the trial was unfair

to the Defendants. As such, the Defendants' Rule 59 claim for relief based on the Court's allowance of Howard's testimony is DENIED.

The Defendants remaining assertion is that the jury's award of punitive damages was against the manifest weight of the evidence. (D. 149 at pg. 21). They rely exclusively on their Rule 50(b) argument regarding punitive damages, claiming that no reasonable jury could have found that the Defendants' conduct was malicious and reckless. *Id*. at pp. 14-15; 21. The Defendants emphasize the evidence presented at trial, which supported their contention that safety procedures and protocols were in place at the bakery. *Id*. at pp. 14-15. The evidence they highlight, however, does not negate the jury's award of punitive damages.

Much like its finding that the Plaintiff met his burden and proved his Eighth Amendment claim, it was also reasonable for the jury to conclude that the Plaintiff was entitled to punitive damages. Again, three inmates testified that they were injured while working on the bun hopper before the Plaintiff's incident. (D. 158 at pg. 29); (D. 159 at pp. 84-85; 94). Although the Defendants denied any knowledge or memory of these events, they acknowledged they were notified of all serious injuries to inmate workers during the course of normal business. (D. 158 at pp. 171-72; 175; 245-47; 254; 295). Given this record, it was reasonable for the jury to conclude that the Plaintiff was entitled to punitive damages. The jury's conclusion that the Defendants acted with deliberate indifference in violation of the Plaintiff's Eighth Amendment rights is, *per se*, a sufficient basis to sustain an award of punitive damages for deliberate indifference. *Walsh v. Mellas*, 837 F. 2d 789, 801-02 (7th Cir. 1988); see also *Woodward v. Correctional Medical Services of Ill., Inc.*, 368 F. 3d 917, 930 (7th Cir. 2004) (noting that the standard is the same for both claims). Therefore, the Defendants' Rule 59 claim for relief based on the jury's award of punitive damages is DENIED.

As a result of the foregoing analysis, the Defendants' Combined Motion Under Rules 50(b) and 59(a) (D. 148) is DENIED.

The Court notes that the Plaintiff's Amended Motion for Attorney Fees and Costs (D. 156) was stayed pending the Court's resolution of this Motion. (See the Court's November 30, 2018 Text Order). The Defendants hereby have 14 days, by February 28, 2019, to file their Response to the Plaintiff's Amended Motion for Attorney Fees and Costs.

## CONCLUSION

For the reasons stated above, the Defendants' Combined Motion Under Rules 50(b) and 59(a)—(D. 148)—is DENIED. The Defendants have until February 28, 2019, to file their Response to the Plaintiff's Amended Motion for Attorney Fees and Costs (D. 156).

*It is so ordered.*

Entered on February 13, 2019

s/ Michael M. Mihm
Michael M. Mihm
Senior United States District Judge